## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MADELYN S.,[1]

                                        Plaintiff,

           v.                                               5:20-CV-1478
                                                            (DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, for Plaintiff
TIMOTHY BOLEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT and RECOMMENDATION

This matter was referred to me for report and recommendation to the Honorable

David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Child's Insurance Benefits ("CIB"),

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or

about November 14, 2013, each alleging disability beginning June 15, 2011.

(Administrative Transcript ("T.") 97–99, 208–23). These applications were initially

denied on or about January 30, 2014. (T. 97–109). On May 27, 2015, plaintiff testified

at a hearing before Administrative Law Judge ("ALJ") Laura Michalec Olszewski. (T.

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

39–73).  ALJ Olszewski issued an unfavorable decision on August 13, 2015 (T. 29–38), and the Appeals Council denied plaintiff's request for review on March 15, 2017 (T. 1–8).  Plaintiff commenced an action challenging the decision in the Northern District of New York.  *Madelyn S. v. Berryhill*, No. 5:17-CV-545 (TWD).  On September 6, 2018, Magistrate Judge Thérèse Wiley Dancks ordered that the decision of the Commissioner be reversed, and the case remanded.  (T. 749–61).

On November 16, 2018, the Appeals Council issued an order remanding the matter to an ALJ for further proceedings consistent with the order of the district court. (T. 764–70).  ALJ Robyn L. Hoffman presided over the matter on remand, and conducted three separate hearings at which she procured additional testimony from plaintiff, as well as vocational expert (VE) Jay Steinbrenner.  (T. 575–697).  On September 30, 2020, ALJ Hoffman issued a decision finding that plaintiff was not disabled.  (T. 703-16).  Plaintiff did not file written exceptions and the Appeals Council did not assume jurisdiction, making ALJ Hoffman's decision the Commissioner's final decision.

## II.    GENERALLY APPLICABLE LAW[2]

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful

---

[2]A claimant is entitled to CIB on the earnings record of an insured individual who is entitled to old age or disability benefits or who has died if the claimant is at least eighteen years old and has a disability which began before she turned twenty-two. 20 C.F.R. § 404.350(a). The parties in this case do not dispute that plaintiff was eligible to apply for CIB, and her impairments were appropriately analyzed under the adult standard.

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

3

However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles*

*v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was 28 years old when she testified at the October 2019 supplemental hearing before ALJ Hoffman.  She lived in a one-story house with her twelve-year-old son. (T. 597–98).  Although plaintiff could speak English fluently, she could not read or write in any language. (T. 598).  Her formal education did not extend beyond the sixth grade. (*Id.*).  Plaintiff had a driver's permit, but limited driving herself to work and medical appointments, because of the numbness and pain she experienced in her feet, legs and hands. (T. 606).

Plaintiff testified about several part-time jobs she had undertaken since the initial administrative hearing.  In 2015 and 2016, plaintiff sold handmade jewelry, for which she was paid a percentage of the sales. (T. 583–84).  Plaintiff stopped working in this capacity because she experienced muscle spasms caused by the cold weather. (*Id.*).  As of the date of the October 2019 hearing, plaintiff had been working at the Hilton Garden Inn for approximately one year. (T. 584).  Plaintiff was initially hired for housekeeping work, which included cleaning bathrooms, dusting, and mopping. (T. 585, 587).  These tasks were difficult for plaintiff and exacerbated her symptoms. (*Id.*).  After four months in the same position, plaintiff spoke to her supervisor and was able to

obtain a "comfortable position where [her employer could help her] with some exceptions for [her] to be able to keep [her] job." (T. 585). This included providing plaintiff with a stool so she could sit and stand as needed, and omitting certain responsibilities from her position, such as mopping the floors or carrying food. (T. 585, 588–89). Plaintiff described her position as a greeter responsible for taking breakfast orders. (T. 584–85). She later clarified that she was also handling plates of food. (T. 686). Plaintiff was scheduled to work up to 25 hours a week in this position; working six-hour shifts on no more than three non-consecutive days a week. (T. 588, 593–94).

Plaintiff suffered from full body joint pain. (T. 591). The pain "hardly allow[ed her] to get up in the morning." (T. 591–92). It became less concentrated the more plaintiff moved throughout the day, but was "still there." (T. 592). Plaintiff testified that the pain "shut [her] down." (*Id.*). She also suffered from constipation that sometimes prevented her from working. (*Id.*). Plaintiff took medication for her conditions, which caused daily side effects such as dizziness, vomiting, and weakness. (T. 593). Plaintiff suffered from neck and back pain, which she did not actively treat. (T. 594). Although she had attended physical therapy in the past, it was "too much for [her] body," and she was not able to finish. (T. 595). At home, she took hot showers and used heating pads to help soothe her pain. (T. 611–12).

Plaintiff testified that she does not sleep because of her pain and the insomnia caused by her medication. Specifically, she stated that she did not sleep more than one hour in a night, and did not nap during the day. (T. 595–97). She shared household chore duties with her son, and cooked once or twice a week. (T. 598–99, 603). She

could not go up and down stairs.  (T. 599).  Her son helped her get dressed.  (T. 602).

Plaintiff could not stand for longer than 15 minutes at a time, or sit for periods longer

than 50 minutes without needing to change positions.  (T. 603–604).  Every other day,

depending on what plaintiff was doing, her hands would swell and lose sensation.  (T.

605-06).  She "drop[ped] a lot of things," and there were times when she could not

carry a gallon of milk.  (T. 606, 613).  She testified that she had a good day "once every

other week or once a month, if that."  (T.  613).  She traveled to Puerto Rico in 2016

because her great-grandmother passed away.  (T. 616).

When plaintiff appeared at the June 2020 supplemental hearing, she testified that

she was no longer working due to significant gastric issues and her immuno-

compromised status.  (T. 673).  Plaintiff described suffering from excessive, severe

vomiting and an inability to process certain foods.  (T. 678).  This affected her muscle

spasms.  (*Id.*).  The vomiting required her to leave work, and she was eventually

discharged from the Hilton Garden Inn in March 2020.  (T. 679).  She testified that her

supervisor "couldn't risk [her] working for him" in the context of the COVID-19

pandemic. (T. 680).  Plaintiff subsequently collected unemployment benefits. (T. 681).

Prior to being let go, plaintiff was working as a banquet server at the hotel, serving food

at buffets.  (T. 683).

## IV.    **THE ALJ'S DECISION**

After concluding that plaintiff qualified for consideration of benefits, the ALJ

found "evidence of significant work activity after June 15, 2011 . . . [h]owever the

record d[id] not clearly establish that [plaintiff] engaged in substantial gainful activity

7

for more than a brief period." (T. 546). Next, at step two, the ALJ found that plaintiff had the following severe impairments: connective tissue disorder; fibromyalgia; morbid obesity; cervical spine displacement at C5-6; depressive disorder; and a learning disorder. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 547).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform a range of sedentary work:

> Specifically, she can occasionally lift and carry ten pounds, sit for approximately six hours, and stand or walk for approximately two hours, all in an eight-hour workday with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. [Plaintiff] can occasionally balance on uneven terrain, but is not otherwise limited in her ability to balance on even terrain. She can occasionally stoop, but can never kneel, crouch, or crawl. [Plaintiff] can occasionally reach overhead with her bilateral arms, but can frequently reach in all other directions. She should avoid concentrated exposure to extreme temperatures, wetness, humidity, and respiratory irritants. She should also avoid moderate exposure to vibrations and hazards. [Plaintiff] can perform simple, routine, repetitive tasks in a low stress job, which is defined as involving occasional decision-making, occasional use of judgment, and occasional changes in the work setting. She should perform goal-oriented work, rather than production-pace rate work. She should also have no more than occasional contact with co-workers, supervisors, and the public.

(T. 550).

Next, the ALJ determined that plaintiff had no past relevant work and a "marginal education." (T. 555). However, the ALJ evaluated the VE's testimony and found that plaintiff was capable of making a successful adjustment to other work that

exists in significant numbers in the national economy.  (T. 555-56).  Thus, the ALJ

found that plaintiff was not disabled based on her application for CIB, DIB, or SSI.  (T.

556-57).

## V.   **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in her brief:

1.   The ALJ's assessment of plaintiff's subjective report of symptoms is not
supported by substantial evidence due to errors in considering her
activities.  (Plaintiff's Brief ("Pl.'s Br.") at 16–22) (Dkt. No. 14).

2.   The ALJ's assessment of Dr. Lewis's opinion evidence is not supported by
substantial evidence due to errors in her evaluation of plaintiff's "hand
issues;" the proper evaluation of which would have resulted in one
available job which is inconsistent with the ALJ's mental RFC. (Pl.'s Br. at
22–24).

Defendant argues that substantial evidence supports the ALJ's evaluation of both

the opinion evidence of record, and plaintiff's subjective symptoms.  (Defendant's Brief

("Def.'s Br.") at 6–18) (Dkt. No. 15).  For the following reasons, this court agrees with

the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   **EVALUATION OF SYMPTOMS**

### A.   **Legal Standard**

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*,

606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence

presented by claimants regarding their symptoms, which fall into seven relevant factors

including 'daily activities' and the 'location, duration, frequency, and intensity of

[their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[3] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms,

---

[3] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The court will remain consistent with the terms as used by the Commissioner.

[4] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at \*2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

## B.    Application

Plaintiff challenges the ALJ's conclusion that her statements regarding the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical and other evidence.  In particular, plaintiff argues that the

ALJ did not support this conclusion by substantial evidence in citing plaintiff's performance of her daily activities and her improved condition during her period of employment, in addition to clinical observations. (Pl.'s Br. at 16). The Commissioner contends that the ALJ properly considered these factors in discounting the limiting effects of plaintiff's pain and other subjective symptoms. (Def.'s Br. at 6).

Under SSR16-13p, when evaluating a plaintiff's subjective complaints " '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.' " *Kearney v. Berryhill*, No. 1:16-CV-00652, 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting *Vered v. Colvin*, No. 14-CV-4590, 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)). "Examining the record alongside a plaintiff's subjective allegations is complicated in cases with a fibromyalgia diagnosis because it 'is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.' " *Tricia M. S. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1230 (CFH), 2022 WL 124521, at *4 (N.D.N.Y. Jan. 13, 2022) (quoting SSR 12-2p, 2012 WL 3104869, at *2 (July 23, 2012)). "Indeed, claimants with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions." *Harrison v. Comm'r of Soc. Sec.*, No.

18-CV-6715, 2020 WL 607623, at *2 (W.D.N.Y. Feb. 7, 2020) (citation and internal quotation marks omitted). As such, "the ALJ is not entitled to rely solely on objective evidence – or lack thereof – related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record." *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020) (affirming where the ALJ found fibromyalgia severe, considered the Listing for inflammatory arthritis, and "[r]ather than improperly focusing on positive objective findings to discount [p]laintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicate[d] [ ] careful consideration[.]")*; see also Jackeline R.R. v. Comm'r of Soc. Sec.*, No. 19-CV-00804, 2021 WL 22507, at *4 (W.D.N.Y. Jan. 4, 2021) (determining that the ALJ committed no error where he found the plaintiff's fibromyalgia to be severe, "evaluated [it] under [SSR] 12-2p[,]" "extensively discussed the characteristics of fibromyalgia[,]" and "objective findings on exam were also relatively normal and inconsistent with allegations of severe pain."). "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." SSR 12-2p, 2012 WL 3104869, at *5 (July 23, 2012)).

Here, it is undisputed that ALJ did not solely rely on the absence of abnormal

physical examination results in evaluating plaintiff's statements about the limiting effects of the symptoms caused by her impairments, including fibromyalgia. Plaintiff takes umbrage with the ALJ's consideration of her ability to work during the period of alleged disability. However, the Commissioner correctly notes that a claimant's efforts to work are relevant evidence that can cut against her subjective statements. *See* 20 C.F.R. §§ 404.1571, 416.971 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level . . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Thus, the ALJ properly considered plaintiff's work efforts during the period of alleged disability, including her position as a retail floor attendant from November 2015 through February 2016; a self-employed saleswoman in 2015 and 2016; and her various positions with the Hilton Garden Inn from October 2018 through March 2020. (T. 546). The ALJ acknowledged that these positions did not amount to substantial gainful employment, and she further noted the "special accommodations" plaintiff received while employed by the Hilton Garden Inn relative to her "restrictions." (*Id.*). Conversely, the ALJ pointed out that plaintiff was let go from her position at the Hilton Garden Inn due to "economic downturn" relative to the COVID-19 pandemic, which is not necessarily consistent with plaintiff's testimony regarding her inability to continue working at the hotel due to an exacerbation of her symptoms. (T. 546, 673, 1276).

The ALJ also properly considered evidence that plaintiff received unemployment

14

benefits after she was discharged from the Hilton Garden Inn. *See Maryellen D. v. Berryhill*, No. 5:17-CV-294, 2018 WL 4627664, at *12 (N.D.N.Y. Sept. 27, 2018) ("Nor did the ALJ err in considering Plaintiff's claim for unemployment benefits after the onset date as a factor adversely affecting her credibility."); *Felix v. Astrue*, No. 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination." (collecting cases)).

Moreover, the ALJ explicitly considered plaintiff's ability to work in the context of her fibromyalgia complaints.  To this end, the ALJ noted that "during the period of time when the [plaintiff] was working at [substantial gainful activity levels] in 2019, the [plaintiff] reported improved symptoms associated with her fibromyalgia.  (T. 553, 2175).  This is consistent with plaintiff's report to her primary care physician that fibromyalgia symptoms "[i]mproved actually since starting work."  (T. 2174).  Accordingly, it was not improper for the ALJ to assess whether the evidence surrounding plaintiff's ability to work was inconsistent with her subjective complaints, including that she experienced dizziness, vomiting, and weakness "every day," could not function because he left leg "lock[ed] up" and became "weak and heavy," and that sometimes she could not carry a gallon of milk.  (T. 551).

Nor was the ALJ's consideration of plaintiff's activities of daily living improper when evaluating plaintiff's subjective allegations. *See Herrington v. Berryhill*, No.

3:18-CV-0315, 2019 WL 1091385, *7 (D. Conn. Mar. 8, 2019) ("it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility") (collecting cases).  This court finds no basis for plaintiff's premise that the ALJ failed to discuss the qualifications on plaintiff's ability to engage in these activities.  In her discussion of plaintiff's activities of daily living, the ALJ specifically noted plaintiff's report that she could complete tasks providing "her 'body' did not 'hurt.'" (T. 548).  The ALJ further qualified plaintiff's ability to perform household chores without assistance "unless she was in pain." (*Id.*).  The ALJ clearly recognized that plaintiff was limited, to some extent, in her activities of daily living, and considered this in conjunction with plaintiff's other reports that she could care for her son, travel to Puerto Rico, care for her mother after she had vascular surgery, and care for her two dogs. (*Id.*).

The ALJ's assessment of an individual's "subjective complaints" regarding her pain and other symptoms is entitled to substantial deference by a reviewing court. *Rivera v. Berryhill*, 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018) (internal quotation marks and citation omitted); *see also Argenti v. Saul*, No. 18 Civ. 9345, 2020 WL 1503171, at *6 (S.D.N.Y. Mar. 30, 2020) ("A court may not second-guess the ALJ's decision to discount a claimant's statements about her symptoms where the ALJ identified specific record-based reasons for his ruling . . . and where [the] determination is supported by substantial evidence.") (cleaned up).  Here, the ALJ "did not look to the medical evidence as proof positive plaintiff was completely without symptoms or completely pain free[.]" *Bush v. Colvin*, No. 5:14-CV-0601(GTS), 2015 WL 4078204,

at *9 (N.D.N.Y. July 6, 2015).  Instead, she carefully evaluated the clinical observations of record in conjunction with plaintiff's self-reported activities of daily living, and the relief plaintiff experienced while employed, in concluding that plaintiff maintained a significantly restricted RFC.  Accordingly, the court finds that the ALJ did not err in concluding that plaintiff's allegations of disabling pain were not fully supported by the record.

## VII.  RFC/WEIGHING EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

17

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.     Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether

the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to

consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

Plaintiff contends that the ALJ erred in evaluating some of the manipulative limitations opined by plaintiff's primary care physician, Maryellen Lewis, M.D. Specifically, plaintiff purports that the ALJ's error in failing to limit plaintiff to "occasional" handling, fingering, and/or feeling was not harmless error, because it would eliminate two out of the three jobs found available at step five, and the remaining job was not compatible with plaintiff's mental RFC as determined by the ALJ.  The Commissioner maintains that the ALJ's exclusion of manipulative limitations is supported by substantial evidence, and any error in doing so did not prejudice plaintiff.

The ALJ explicitly considered the June 2015 opinion of Dr. Lewis in her written decision.  (T. 552).  Dr. Lewis concluded that plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently; stand or walk for a total of at least two hours in an eight-hour workday; and sit for a total of less than six hours in an eight-hour workday.  (T. 464–72).  She limited plaintiff to occasionally climbing stairs, balancing, stooping and kneeling, but opined that plaintiff could never crouch, crawl, or climb ladders, ropes or scaffolds.  (*Id.*).  Dr. Lewis also opined that plaintiff had a "limited" ability to handle, finger and feel, but had no limitations for reaching, seeing, or communicating.  (*Id.*).  She recommended that plaintiff avoid concentrated exposure

to extreme temperatures, wetness, humidity and respiratory irritants, and even moderate exposure to vibration and environmental hazards, such as machinery or heights. (*Id.*).

The ALJ indicated that she gave Dr. Lewis's opinion the "greatest weight" among the opinion evidence of record. (T. 552). Indeed, most of Dr. Lewis's opinions are accounted for in the ALJ's limited RFC determination, with the exception of Dr. Lewis's assessment of plaintiff's abilities for sitting,[5] handling, fingering, or feeling. (*Id.*). The ALJ explained why she was not adopting more restrictive limitations in these domains. First, the ALJ noted that "none of the other medical sources found the [plaintiff] to have limitations in these areas." (T. 552). Specifically, both consultative examiners Elke Lorensen, M.D. and Kalyani Ganesh, M.D., indicated upon examination that plaintiff demonstrated full strength and sensation in all four extremities, with full grip strength bilaterally and intact hand and finger dexterity. (T. 405, 1349). The ALJ was permitted to reject Dr. Lewis's assessment, and conclude that Dr. Lorensen and Dr. Ganesh's findings upon examination were more reliable, if these opinions were supported by evidence in the record. See *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (quoting *Mongeur v. Heckler*, 722 F.2d 1033 (2d Cir. 1983) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (citation omitted)).

To this end, the ALJ cited to plaintiff's treatment notes, indicating that plaintiff exhibited normal range of motion and sensation at follow-up examinations for her

---

[5]Plaintiff does not challenge the ALJ's decision regarding her capacity for sitting.

connective tissue disorder.  (T. 553).  Although the record reflects a handful of occasions on which plaintiff exhibited tenderness with palpation in the small joints of her hands (T. 1657, 1662, 1702, 1712, 2420), her longitudinal rheumatology records overwhelmingly indicated "no active synovitis," in addition to a lack of tenderness or limitation to the range of motion in her hands.  (T. 492, 497, 1288, 1293, 1299, 1327, 1333, 1356, 1361, 1370, 1375, 1379, 1667, 1672, 1680, 1686, 1696, 2183, 2190, 2196).  Dr. Lewis's records themselves are mostly silent as to examination findings regarding plaintiff's hands and fingers during the period of alleged disability, with the exception of a November 20, 2013 visit at which plaintiff complained of numbness and loss of strength in her hands.  (T. 384).  Upon examination that day, Dr. Lewis indicated that plaintiff exhibited normal range of motion, muscle strength and stability in all extremities with no pain on inspection, and no sensory loss.  (T. 388).  It was not improper for the ALJ to conclude that the medical records as a whole did not support the handling and fingering limitations opined by Dr. Lewis.  *See Ismet v. Saul*,  No. 6:19-CV-1175 (GTS), 2021 WL 964209, at *5 (N.D.N.Y. Mar. 15, 2021) (collecting cases finding good reason for rejecting treating physician opinion where ALJ found that opinion inconsistent with other medical evidence in the record and the physician's own treatment notations.)

The ALJ also took plaintiff's self-reported limitations for handling and fingering into account in evaluating Dr. Lewis's opinion.  In her January 2014 function report, plaintiff described that her ability to use her hands was "fine."  (T. 258).  She described her hobbies and "sometimes sewing" and "cooking daily."  (T. 256).  In a supplemental

function report prepared in May 2017, plaintiff indicated that she could not make a strong fist without her hands getting numb and weak. (T. 1171). She described a hobby of coloring every other week, because if she colored "often" her hands would go numb. (T. 1170). She indicated that her hands were "[not] strong anymore." (T. 1168). As previously discussed, the ALJ considered plaintiff's report that her fibromyalgia symptoms had improved since she started working. (T. 553, 2174–75). This is consistent with her rheumatologist's ongoing recommendation that plaintiff "engage in light weight bearing exercise." (T. 409, 414, 418, 493, 1289, 1293, 1299, 1320, 1333, 1357, 1375, 1380, 1703, 1708, 2183, 2196). It was not outside the scope of the ALJ's authority to discount Dr. Lewis's manipulative restrictions based on contradictory statements from plaintiff concerning her own abilities. *See Dawn P. v. Berryhill*, No. 6:17-CV-1265 (DJS), 2019 WL 1024279, at *5 (N.D.N.Y. Mar. 4, 2019) (ALJ properly discounted treating physician's restrictive limitations which were inconsistent with plaintiff's self reported ability to walk 10,000 steps a day and the treating physician's own directing that plaintiff exercise more).

Even if this court were persuaded that the ALJ erred in not including manipulative limitations in the RFC, such error was harmless because it did not affect the ultimate determination of disability. The VE testified that an individual with plaintiff's RFC could perform three different occupations. (T. 556). According to the Dictionary of Occupational Titles ("DOT"), one of those jobs, surveillance-system monitor, does not call for reaching, handling, and fingering. *See Holland v. Comm'r of Soc. Sec.*, No. 5:14-CV-1327 (GTS), 2016 WL 482063, at *9 (N.D.N.Y. Feb. 5, 2016)

("The surveillance-system monitor position requires no reaching, handling, climbing, stooping, kneeling, crouching, or crawling[.]") (citing DOT § 379.367-010, 1991 WL 672131 (4th ed., 1991)).  The VE testified that there are approximately 22,604 surveillance-system monitor positions in the national economy.  (T. 647–48).

Plaintiff contends that the job of surveillance-system monitor is not compatible with the mental limitations imposed in the ALJ's RFC determination – specifically, with plaintiff's limitation for simple, routine, repetitive tasks.  (Pl.'s Br. at 23).  In support of her position, plaintiff cites a case from the District of Connecticut, holding that the classification of GED Reasoning Level 3 "created an unresolved apparent inconsistency with an RFC including limitation to simple, routine, repetitive tasks, which inconsistency required resolution."  *Id.* (citing *Haman v. Berryhill*, 3:17-CV-1752, 2019 WL 1383439, at *14–15 (D. Conn. Mar. 27, 2019).  After reviewing the state of the law on this issue, this court declines to recognize *Haman* as persuasive authority.  Specifically, the court notes that *Haman* is directly at odds with decisions from this district which have found no incompatibility between jobs identified as GED level 3 and a limitation to performing simple and low stress work.  *See Cross v. Astrue*, No. 08-CV-0425 (VEB), 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) ("[J]obs identified as GED–R2 or GED–R3 . . . are not incompatible with the non-exertional limitations established by the ALJ that Plaintiff's work must be simple, low-stress, and entry-level, with no complex decision-making, no planning, scheduling or report writing, no multi-tasking, little change in the work environment, and infrequent interaction with the public or co-workers."); *Reynolds v. Comm'r of Soc. Sec.*, No.

11–CV–00778 (NPM), 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) (plaintiff could perform GED level 3 job even though limited to simple work); *McCusker v. Comm'r of Soc. Sec.*, No. 13-CV-1074, 2014 WL 6610025, at *4 (N.D.N.Y. Nov. 20, 2014) (collecting cases supporting "that jobs with DOT reasoning levels of two or three are compatible with limitations to simple and low stress work"). As defendant points out, the court's finding in *Haman* is contrary to at least one other decision within it's own district. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 409 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013). Accordingly, plaintiff was capable of performing the surveillance-system monitor job, notwithstanding the mental limitations contained in her RFC.

Plaintiff alternatively argues, via footnote, that the 22,604 available surveillance-system monitor jobs is an insignificant amount, and cannot sustain the basis of the ALJ's step five determination. (Pl.'s Br. at 23 n. 3). Neither the Regulations nor the Social Security Rulings define "significant number." *Koutrakos v. Colvin*, No. 3:13-CV-1290, 2015 WL 1190100, at *20–22 (D. Conn. Mar. 16, 2015). Courts have held that a "significant number" of jobs is "fairly minimal." *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (citing *Rosa v. Colvin*, No. 12-CV-0170(LEK/TWD), 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2013)). Moreover, this district has historically recognized jobs in numbers over 9,000 to be significant. *See Kelly D. v. Saul,* No. 5:18-CV-1190 (DJS), 2019 WL 6683542, at *6 (N.D.N.Y. Dec. 6, 2019) (listing cases). Here, the number of surveillance-system monitor jobs testified to by the VE was more than double that amount. Thus, even if

the Court were to find that the ALJ erred in crafting an RFC without any manipulative restrictions, plaintiff could still perform the position of surveillance-system monitor, which provides significant numbers of jobs in the national economy for purposes of this court's review.  *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("[t]he Commissioner need show only one job existing in the national economy that [plaintiff] can perform.")

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the decision of the Commissioner be AFFIRMED and plaintiff's complaint DISMISSED IN ITS ENTIRETY.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: January 27, 2022

Andrew T. Baxter
U.S. Magistrate Judge